# Exhibit 2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>B.A.S.S. & M., INC., *et al.*,[1]<br><br><br>Debtor(s). | Case Number: 24-15381 (DRC)<br>(Jointly Administered)<br>Chapter: 11<br>Honorable Donald R. Cassling |

**ORDER (I) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; (II) APPROVING THE FORM AND MANNER OF NOTICES; (III) SCHEDULING A SALE HEARING AND, IF NECESSARY, AN AUCTION, (IV) APPROVING THE BID PROTECTIONS; (V) APPROVING 21-DAY SALE PROCEDURES; (VI) APPROVING THE FORM ASSET PURCHASE AGREEMENT; AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for (i) entry of an order (this "Bid Procedures Order"), (a) authorizing and approving procedures (the "Bid Procedures") for the Debtors to sell all, substantially all, or a portion of the Debtors' real properties (the "Properties"), (b) approving the form and manner of the sale notice and notice of stalking horse bidder designation, (c) authorizing the Debtors to enter into one or more "stalking horse" purchase agreements, subject to higher and better bids, (d) approving the form asset purchase agreement, and (e) setting the time, date, and place of a hearing (the "Sale Hearing") to consider any sales; (ii) entry of one or

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: B.A.S.S. & M, Inc. (6526), Dagny, LLC (3773), Daisyland, LLC (4095), Darcy, LLC (4150), Darden, LLC (5120), Debrox, LLC (1153), Derby, LLC (5201), Dion, LLC (9166), Direct, LLC (9148), Distinctive, LLC (4773), Dorchester, LLC (9158), Dover I, LLC (4933), MGIL LLC (9877), Real Soil, LLC (4640), Real Taxes, LLC (4983), Regal, LLC (6733), S.T.E.P.A., Inc. (1785), STTA LLC (0073), Super I, LLC (5421), Vital, LLC (9882), Vivid, LLC (0238). The location of the Debtors' service address is: 2516 Waukegan Rd #339, Glenview, Illinois 60025.

[2] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the Motion.

more orders (each a "Sale Order") authorizing and approving the sale of the Debtors' right, title, and interest in the Properties, free and clear of all liens, claims, encumbrances, and interests, pursuant to section 363 of the Bankruptcy Code; and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard evidence and arguments in support of the requested relief at a hearing before the Court (the "Hearing"); and the Court having reviewed the forms of notice attached to the Motion (the "Notices") and found that the Notices will provide sufficient notice to creditors and parties in interest of the procedures, events and deadlines described in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon the record of all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED pursuant to sections 363(b), 363(f), and 105(a) of the Bankruptcy Code, as more fully set forth herein, as to each of the Properties, and all objections to the Motion that were not withdrawn are overruled.

2. Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these Chapter 11 Cases.

## I. <u>Bid Procedures, Auction and Related Relief</u>

3. The Bid Procedures attached hereto as **Exhibit 1** are hereby APPROVED, and the Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bid Procedures.

## II. <u>The Sale Schedule</u>

4. The dates and deadlines below are approved but may also be modified by the Debtors to the extent permitted under the Bid Procedures.

| Event | Date or Proposed Date | Deadline |
|---|---|---|
| Bid Procedures Hearing | December 10, 2024 | Date for hearing to consider approval of the Bid Procedures. |
| Bid Deadline | March 7, 2025 | Deadline by which the Debtors must ***actually receive*** binding Qualified Bids from Qualified Bidders. |
| Qualified Bid Selection Deadline | March 12, 2025 | Deadline by which the Debtors, in consultation with Hilco and the Consultation Parties, must determine which proposals constitute Qualified Bids. |
| Stalking Horse Deadline (if Applicable) | March 14, 2025 | Deadline by which the Debtors must enter into stalking horse agreement(s) with the leading bidder(s) in advance of the Auction(s). |
| Starting Bid Notice (if Necessary) | March 18, 2025 | Deadline by which the Debtors will provide a notice designating the starting bid(s) and the bidding increments for each Property or group of Properties to all Qualified Bidders participating in the Auction (the "<u>Stalking Horse Bidder Designation Notice</u>"). |
| Auction (if Necessary) | March 19, 2025 | Date on which the Debtors will commence an auction for the Properties. |
| Auction Results Notice | March 20, 2025 | Date by which the Debtors will serve notice of the results of the Auction to all Qualified Bidders, the Consultation Parties, and all other parties who have timely elected to receive notices related to the sale. |

| Event | Date or Proposed Date | Deadline |
|---|---|---|
| Sale Objection Deadline | March 28, 2025 | Deadline by which Sale Objections must be filed with the Court and served so as to be actually received by the Objection Notice Parties. |
| Sale Reply Deadline | April 4, 2025 | Deadline by which the Debtors and/or the Successful Bidder(s) will file and serve their reply, if any, in support of the Sale. |
| Sale Hearing | April 8, 2025 | Date for hearing to consider approval of the Sale pursuant to section 363 of the Bankruptcy Code. |

## III. Sale Notice

5. The Sale Notice, substantially in the form attached to the Motion as **Exhibit 2**, is sufficient to provide effective notice to all interested parties of the Bid Procedures, the Auction, and the Sale contemplated under the Bid Procedures pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006, and is hereby approved.

## IV. Sale Objection Procedures

6. Sale approval shall be considered at the Sale Hearing, which shall take place on **April 8, 2025, at 9:30 a.m. (prevailing Central Time)**.

7. Any party that seeks to object to the relief requested in the Motion pertaining to approval of the Sale of the Properties ("Sale Objection") shall file a formal objection that complies with the procedures set forth in the Motion. Each Sale Objection shall state the legal and factual basis of such objection.

8. Any and all written objections as contemplated by this Order must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Bankruptcy Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Court, 219 S. Dearborn St., Chicago, IL 60604, together with proof of service, **on or before 5:00 p.m. (prevailing Central Time) on March 28, 2025** (the "Sale Objection Deadline"); and (e) be served, so as to be actually received

on or before the Sale Objection Deadline, upon the following parties (collectively, the "Objection Notice Parties"): (i) Debtors' counsel, Husch Blackwell LLP, 120 South Riverside Plaza, Suite 2200, Chicago, Illinois, 60606 (Attn. Michael A. Brandess (Michael.brandess@huschblackwell.com) and Thomas J. Zavala (Tom.Zavala@huschblackwell.com)); (ii) counsel to the DIP Lender, Norton Rose Fulbright US LLP, 1301 Avenue of the Americas, New York, NY 10019 (Attn. Robert Hirsh (robert.hirsh@nortonrosefulbright.com) and Edward Casmere (ed.casmere@nortonrosefulbright.com)); (iii) the City of Chicago, 121 N. LaSalle St., Suite 600, Chicago, IL 60602 (Attn. David Holtkamp (David.Holtkamp2@cityofchicago.org) and Peter Cavanaugh (Peter Cavanaugh@cityofchicago.org)); and (iv) the Office of the United States Trustee for Region 11, 219 South Dearborn, Room 873, Chicago, IL 60604, (Attn: Joshua D. Greene (joshua.d.greene@usdoj.gov)). Failure to object to the relief requested in the Motion shall be deemed to be "consent" for purposes of Bankruptcy Code section 363(f). If a Sale Objection is not filed and served on or before the Sale Objection Deadline, the Debtors request that the objecting party be barred from objecting to the Sale and not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

**V. Stalking Horse Agreements**

9. Subject to the Bid Procedures and approval at the Sale Hearing (as to which all parties' rights are reserved), the Debtors' entry into one or more Stalking Horse Agreements, subject to higher and better bids, is authorized; provided, however, that any Bid Protections shall be subject to Court approval at the Sale Hearing.

10. The form of Stalking Horse Bidder Designation Notice attached to the Motion as **Exhibit 3** is hereby APPROVED. The Debtors shall file and serve any Stalking Horse Bidder Designation Notices on or before March 18, 2025.

**VI. Form Asset Purchase Agreement**

11. The Debtors are authorized to use a modified version of the Chicago Association of Realtors' standard form titled Vacant Land Purchase and Sale Contract (the "APA Form") as the asset purchase agreement in these Cases, which shall include an exhibit whereby each purchaser will identify the specific Property or Properties to be purchased as well as an allocation of the purchase price for those asset purchase agreements where the purchaser seeks to acquire multiple Properties.

12. The APA Form attached as **Exhibit 5** to the Motion is hereby APPROVED. The Debtors shall include a copy of the APA Form as **Exhibit A** to any Stalking Horse Bidder Designation Notice.

**VII. 21-Day Sale Procedures**

13. The following 21-Day Sale Procedures and the form of notice attached to the Motion as **Exhibit 4** (the "21-Day Sale Notice") are hereby APPROVED.

14. Should the Debtors agree to the terms of sale of a Property (or Properties) to a buyer, the Debtors shall file a 21-Day Sale Notice on the docket setting forth: (i) the address(es) of Property or Properties to be sold, (ii) the identity of the prospective buyer,[3] (iii) the terms of the sale, including purchase price and closing date, (iv) confirmation that all liens (if any) attached to the Properties will attach to the sale proceeds, (v) confirmation that the sale will be

[3] If the prospective buyer does not wish to be publicly identified, the Debtors shall be authorized to redact the buyer's name from any notices filed on the docket; provided, however, that the identity of the prospective buyer shall be made available to the Court and to the Consultation Parties upon request.

free and clear of all liens, claims and encumbrances, (vi) a certification of counsel that the transaction was conducted at arm's length, and that the prospective buyer is a disinterested third-party acting in good faith, and (vii) a proposed form of order approving the 21-Day Sale. The Debtors shall serve all 21-Day Sale Notices on the master service list and all parties that have requested service in these Chapter 11 Cases.

15. The filing of a 21-Day Sale Notice will trigger a 21-Day window (the "21-Day Objection Period") by which parties must object to the 21-Day Sale in writing filed with the Court and served so as to be actually received by the Debtors within the 21-Day Objection Period. Subject to the Court's availability, the Debtors shall schedule and provide notice of tentative hearing to consider objections, if any, and approve the proposed 21-Day Sale (a "Provisional Sale Hearing") within seven (7) days of the end of the 21-Day Objection Period, or such other time as the Debtors and the Court may be available reasonably promptly after the 21-Day Objection Period.

16. During the 21-Day Objection Period, the Debtors and Hilco shall continue to be receptive to higher and better offers for the Properties proposed to be sold pursuant to a 21-Day Sale Notice. Competing offers received during the 21-Day Objection Period shall constitute objections to the extent they are higher and better offers in the Debtors' business judgment and in consultation with the Consultation Parties. Competing offers that do not constitute higher and better offers shall not be considered objections. To the extent that no higher or better offers or objections are received by the end of a 21-Day Objection Period, the proposed 21-Day Sale shall be considered unopposed. The Debtors shall file a certificate of no objection on the docket to notify the Court and parties-in-interest that the proposed 21-Day Sale is unopposed and that the Provisional Sale Hearing is canceled, and the Debtors shall be entitled to cancel the Provisional



HB: 4856-6369-2283.6

Sale Hearing and submit the proposed order approving the 21-Day Sale for entry by the Court without the need for further notice or a hearing.

**VIII. <u>Other Relief Granted</u>**

17. An auction (the "<u>Auction</u>") for the Sale of the Properties, which shall be transcribed or recorded on video, is scheduled at 9:30 a.m. (Central Time) on March 19, 2025 (the "<u>Auction Date</u>"), at the offices of Husch Blackwell, LLP, located at 120 South Riverside Plaza, Suite 2200, Chicago, IL 60606-3912, or such other location, including by virtual meeting, as shall be timely communicated to all persons or entities entitled to attend the Auction, which Auction may be cancelled or adjourned by the Debtors, in consultation with the Consultation Parties.

18. All entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of the Court with respect to all matters related to the terms and conditions of the transfer of Properties, the Auction, and any transaction contemplated herein.

19. Nine Left Capital Master Fund LP is a Qualified Bidder and will be permitted to credit bid up to the full amount of the DIP Obligations (as defined in the Interim DIP Order) at the Auction, subject to section 363(k) of the Bankruptcy Code.

20. A Sale Hearing to consider entry of a Sale Order approving the Successful Bid(s) (as defined in the Bid Procedures) is scheduled to begin at 10:00 a.m. (Central Time) on April 8, 2025 at Appear in Courtroom 619, 219 S. Dearborn St, Chicago, IL 60604, or Using Zoom - Judge Cassling.. The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

21. In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

22. Nothing in this Bid Procedures Order or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

23. This Court shall retain jurisdiction with respect to all matters arising or related to the implementation or interpretation of this Bid Procedures Order.

24. This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

Dated: December 10, 2024

Donald R. Cassling

United States Bankruptcy Judge

**Order Prepared by:**
Michael A. Brandess
Illinois Bar No. 6299158
Michael.Brandess@huschblackwell.com
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 526-1542
(312) 655-1501 *facsimile*

*Counsel to the Debtors*

Lynn Hamilton Butler
Texas Bar No. 03527350
Lynn.Butler@huschblackwell.com
Thomas J. Zavala
Texas Bar No. 24116265
Tom.Zavala@huschblackwell.com
HUSCH BLACKWELL LLP
111 Congress Ave, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 *facsimile*

# Exhibit 1

## Bid Procedures

## Bid Procedures

Set forth below are the Bid Procedures (the "Bid Procedures") to be employed with respect to the proposed solicitation of bids to purchase certain assets currently under the supervision of the United States Bankruptcy Court for the Northern District of Illinois (the "Court").

B.A.S.S. & M., Inc., together with certain of its affiliates who are debtors and debtors in possession (collectively, the "Debtors") [1] in the chapter 11 cases proceeding in the Court under the caption *In re B.A.S.S. & M., Inc., et al.*, Case No. 24-15381 (DRC) (the "Chapter 11 Cases"), have established the following procedures (the "Bid Procedures") to govern the sale of all, substantially all, or a portion of the Debtors' portfolio of their portfolio of real properties located in Chicago, Illinois (collectively, the "Properties"), subject to Court approval:

a. Provisions Governing Qualifications of Bidders. Unless otherwise ordered by the Court, for cause shown, or as otherwise determined by the Debtors, in order to participate in the bidding process for all or some of the Properties, prior to the Bid Deadline (defined below), each person who wishes to participate in the bidding process for all or some of the Properties (a "Potential Bidder") must deliver the following **by electronic mail** to the Debtors, and their counsel and advisors, the DIP Lender, and the City of Chicago, at the following email addresses (the "Bidding Notice Parties"): (i) Debtors: Attn: Suzie B. Wilson (sbw1987@aol.com) and Swedlana Dass (sdass0628@aol.com); (ii) Debtors' counsel: Husch Blackwell LLP, Attn: Michael A. Brandess (Michael.Brandess@huschblackwell.com), Lynn Hamilton Butler (Lynn.Butler@huschblackwell.com), and Thomas J. Zavala (Tom.Zavala@huschblackwell.com); (iii) Debtors' Broker: Attn: Hilco Real Estate, LLC ("Hilco"), Attn: Joel Schneider (JSchneider@hilcoglobal.com) and Stephen Madura (SMadura@hilcoglobal.com); (iv) Debtors' Financial Advisors: Rock Creek Advisors, Attn: Bryan Ayers (BAyers@rockcreekfa.com) and Patrick Donnelly (PDonnelly@rockcreekfa.com); (v) Counsel to the DIP Lender: Norton Rose Fulbright US LLP, Attn: Robert Hirsh (robert.hirsh@nortonrosefulbright.com) and Edward Casmere (ed.casmere@nortonrosefulbright.com); and (vi) Counsel to the City of Chicago, Attn: David Holtkamp (David.Holtkamp2@cityofchicago.org) and Peter Cavanaugh (Peter Cavanaugh@cityofchicago.org):

   (i) A completed APA Form that provides for the proposed Properties to be purchased, with an allocation of price for each respective Property;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: B.A.S.S. & M, Inc. (6526), Dagny, LLC (3773), Daisyland, LLC (4095), Darcy, LLC (4150), Darden, LLC (5120), Debrox, LLC (1153), Derby, LLC (5201), Dion, LLC (9166), Direct, LLC (9148), Distinctive, LLC (4773), Dorchester, LLC (9158), Dover I, LLC (4933), MGIL LLC (9877), Real Soil, LLC (4640), Real Taxes, LLC (4983), Regal, LLC (6733), S.T.E.P.A., Inc. (1785), STTA LLC (0073), Super I, LLC (5421), Vital, LLC (9882), Vivid, LLC (0238). The location of the Debtors' service address is: 2516 Waukegan Rd #339, Glenview, Illinois 60025.

(ii) sufficient information, as determined by the Debtors, in their reasonable business judgment and in consultation with the DIP Lender and the City of Chicago (together, the "Consultation Parties"), to demonstrate proof of financial wherewithal to consummate the transaction, including:

(A) Disclosure of Identity. Fully disclose the identity of each Potential Bidder, including any principal or representative that will be bidding for the Properties on behalf of the Potential Bidder or otherwise participating in connection with such bid, and the complete terms of any such participation, as well as any of Debtors' creditors or Insiders (as defined under section 101(31) of title 11 of the United States Code (the "Bankruptcy Code")) associated with the Potential Bidder;

(B) Proof of Financial Wherewithal. Demonstration (to the reasonable satisfaction of the Debtors, in consultation with the Consultation Parties) of sufficient financial wherewithal to be able to close on a purchase of the Properties, which may include:

(1) current audited financial statements and latest unaudited financial statements of the potential bidder, or, if the potential bidder is an entity formed for the purpose of acquiring the Properties, current audited financial statements and latest unaudited financial statements of the equity holders of the potential bidder who will guarantee the obligations of the potential bidder;

(2) current financial bank statements, screenshot(s) of bank account balance(s), a letter from the bank of the potential bidder indicating the availability of the funds;

(3) written evidence of a firm, irrevocable commitment for financing; and/or

(4) such other form of financial disclosure and credit-quality support or enhancement that will allow the Debtors and their financial advisors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale; and

(iii) if the Potential Bidder is represented by a broker, the broker's retention agreement

A Potential Bidder that has executed a confidentiality agreement and has otherwise complied with the requirements described above, and that the Debtors determine in their reasonable business judgment, after consultation with their counsel, financial and other advisors, and the Consultation Parties, is likely (based on availability of financing, experience and other considerations) to be able to

consummate the sale of the Properties (the "Sale"), will be deemed a "Qualified Bidder."

For the sake of clarity, the fact that a bidder has been deemed a "Qualified Bidder" does not, by itself, entitle such bidder to participate at the Auction. In order to participate in the Auction or any other overbidding process pursuant to these Bid Procedures, a Qualified Bidder must also submit, by the Bid Deadline, a Bid that is determined to be a Qualified Bid, as defined in, and in accordance with, these Bid Procedures.

b. Bid Deadline. A Qualified Bidder that desires to make a Bid (as defined below) must deliver written copies of its Bid on an APA Form to be provided by the Debtors and Hilco by electronic mail to the Bidding Notice Parties at the addresses set forth in (a) above, so as to be received not later than March 7, 2025, at 5:00 p.m. (CT) (as may be extended as set forth herein, the "Bid Deadline"). As soon as practicable after receipt of a Bid, but in no event more than 24 hours after receipt of a Bid, Debtors' counsel shall provide copies of the Bid and all related documents to counsel for each of the Consultation Parties. The Debtors may, in their discretion, extend the Bid Deadline to address any inadequacies in an otherwise sufficient Bid submitted by the Bid Deadline.

c. Provisions Governing Qualified Bids. An offer, solicitation, or proposal (each, a "Bid") that a Qualified Bidder submits in writing pursuant to these Bid Procedures and that satisfies each of the following requirements, as determined by the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, shall constitute a "Qualified Bid":

(i) *Property*. Each Bid must state that the applicable Qualified Bidder offers to purchase all or a portion of the Properties, upon the terms and conditions substantially as set forth in the form of the Vacant Land Purchase and Sale Contract, and any addendum thereto, which will be provided by the Debtors and filed by the Debtors in the Chapter 11 Cases in advance of the hearing on these Bid Procedures (in either case, the "APA Form"), including without limitation, with respect to certainty and timing of closing, or pursuant to an alternative structure, or upon alternative terms and conditions that the Debtors, in consultation with the Consultation Parties, reasonably determine are no less favorable than the terms and conditions of the APA Form. Each Bid must specifically identify the specific Properties to which it relates. Each APA Form must be accompanied by a redline indicating any proposed modifications to the APA Form.

(ii) *Purchase Price; Minimum Bid*. Each Bid must clearly set forth (a) the aggregate purchase price to be paid (the "Purchase Price") for each Property and (b) the addresses of the Properties to be purchased to facilitate Bid comparisons by the Debtors, the Consultation Parties, and each of their respective advisors. The Purchase Price shall include: (x) cash in an amount not less than any minimum bid amount previously



HB: 4856-6369-2283.6

identified by the Debtors for the Properties or relevant portion thereof (the "Cash Consideration") and (y) all other estimated costs and expenses to be paid by Buyer at closing. The Debtors reserve the right to set and/or adjust any minimum bid amounts with respect to the Properties and any portion thereof at any time within their discretion (in consultation with the Consultation Parties) in order to maximize the value of the Properties.

(iii) *Closing Date*. Each Bid must require that the Sale close by the date that is fourteen (14) days after the entry of a Sale Order by the Bankruptcy Court, but in no event later than June 30, 2025.

(iv) *Binding and Irrevocable*. Each Bid must be unconditional and irrevocable, subject only to Bankruptcy Court approval, and include a letter, signed by an authorized representative of the Qualified Bidder who has authority to bind the Qualified Bidder, stating that the Qualified Bidder's Bid is irrevocable until the Court approves the selection of the Successful Bidder (as defined below) and the Back-Up Bidder (as defined below), provided that if such Qualified Bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (ii) (x) with respect to the Successful Bidder only, 45 days after the Sale Hearing, subject to further extensions as may be agreed to pursuant to the applicable purchase agreement, and (y) with respect to the Back-Up Bidder only, the Back-Up Bid Expiration Date (as defined below).

(v) *Marked Agreement*. Each Bid must include a duly authorized and executed APA Form, and addendum thereto, which agreement shall include, among other things, the Purchase Price for the Properties expressed in U.S. Dollars, and must be accompanied by all exhibits and schedules thereto, as well as such additional ancillary agreements as may be required by the Qualified Bidder, with all exhibits and schedules thereto (or term sheets that describe the material terms and provisions of such agreements), as well as copies of such materials marked to show those amendments and modifications to the APA Form (collectively, a "Marked Agreement"), and the proposed order for approval of the Sale by the Court proposed by the Qualified Bidder ("Proposed Sale Order"). To be deemed a Qualified Bid, a Bid may not contain additional termination rights, covenants, financing or due diligence contingencies, shareholder, board of director or other internal approval contingencies, or closing conditions, other than as may be included in the APA Form (it being agreed and understood that such Bid shall modify the APA Formas needed to comply in all respects with the Bid Procedures Order, and will remove provisions that apply only to the stalking horse bidder, if any, such as the Bid Protections).

(vi) *As-Is, Where-Is*. Each Bid must include an acknowledgement and representation that the Qualified Bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Properties prior

to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Properties in making its bid; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Properties or the completeness of any information provided in connection therewith or the Auction (as defined below), except as expressly stated in the Marked Agreement; and (d) is not entitled to any expense reimbursement or break-up fee in connection with its bid unless expressly agreed to the contrary by the Debtors, in consultation with the Consultation Parties, prior to the Bid Deadline.

(vii) *Affirmative Statement*. Each Bid shall be accompanied by an affirmative statement that: (i) the Qualified Bidder submitting such Bid has acted in good faith consistent with section 363(m) of the Bankruptcy Code and not in any manner prohibited by section 363(n) of the Bankruptcy Code; (ii) the Qualified Bidder submitting such Bid has and will continue to comply with the Bid Procedures and any Order approving the Bid Procedures; and (iii) the Qualified Bidder submitting such Bid waives any substantial contribution (administrative expense) claims under section 503(b) of the Bankruptcy Code related to the bidding for the Debtors' assets or otherwise participating in the Auction, except as expressly agreed to the contrary by the Debtors, in consultation with the Consultation Parties, prior to the Bid Deadline.

(viii) *Authorization*. Each Bid must include evidence, in form and substance reasonably satisfactory to the Debtors, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the transactions contemplated by the Marked Agreement and the Sale.

(ix) *Deposit*. Each Bid must be accompanied by a cash deposit in the form of a wire transfer (to a bank account specified by the Debtors), certified check, or such other form acceptable to the Debtors, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to ten percent (10.0%) of the Purchase Price, which the Debtors shall hold in trust, to be dealt with as provided for under "Deposits" herein.

(x) *Consent to Jurisdiction*. Each Bid must state that the Qualified Bidder consents to the jurisdiction of the Bankruptcy Court

(xi) *Additional Information*. Each Bid must contain any other information reasonably requested by the Debtors. Bidders must use every effort to comply with all reasonable requests by the Debtors within a timeframe reasonably set by the Debtors.

(xii) *Bid Deadline*. Each Bid must be received by the Bid Deadline.

The Debtors will determine, in their reasonable business judgment, and in consultation with the Consultation Parties, whether to entertain Bids for the Properties that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids. The Debtors reserve the right, in consultation with the Consultation Parties, to continue to negotiate the terms of any Qualified Bid with the applicable Qualified Bidder after the Bid Deadline and prior to the Auction.

d. Stalking Horse. At any time prior to the Bid Deadline, the Debtors, in consultation with the Consultation Parties, may enter into one or more Purchase and Sale Agreements, subject to higher and better bids, which will serve as the "stalking horse" bid for the Properties or portions thereof (each, a "Stalking Horse Agreement"). In the event that the Debtors enter into one or more Stalking Horse Agreements, with respect to which the prospective purchaser is not an insider of the Debtors (a "Non-Insider Stalking Horse Agreement"), the Debtors may seek approval at the Sale Hearing of a break-up fee and expense reimbursement of no more than three percent (3%) in the aggregate of the Cash Consideration of such Non-Insider Stalking Horse Agreement (together, the "Bid Protections"); provided, however, that any Bid Protections shall be subject to the liens and super-priority claims granted in favor of the DIP Lender under the Interim DIP Order and/or the Final DIP Order. Promptly upon entering into a Stalking Horse Agreement, the Debtors shall notify all Qualified Bidders, the Consultation Parties, and all other parties who have timely elected to continue to receive notices related to the sale process, of the Debtors' entry into a Stalking Horse Agreement and provide them with a copy of such Stalking Horse Agreement.

e. Aggregate Bids. The Debtors may, in consultation with the Consultation Parties, aggregate separate bids from unaffiliated persons to create a "Qualified Bid" from a "Qualified Bidder," including at the Auction with respect to bids for separate portions of the Properties, to determine the highest or otherwise best Qualified Bid(s); provided that all Qualified Bidders shall remain subject to the provisions of section 363(n) of the Bankruptcy Code regarding collusive bidding.

f. Evaluation of Competing Bids. A Qualified Bid, and the determination of the highest or otherwise best Qualified Bid(s), will be valued based upon several factors including, without limitation, items such as the Purchase Price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the Qualified Bidder) provided by such Bid, the claims likely to be created by such Bid in relation to other Bids, the counterparties to the transactions, the proposed revisions to the relevant transaction documents, the specific Properties included in such Qualified Bid, the effect of the transactions on the estimated overall value to be received by the Debtors' estates for the Properties, other factors affecting the speed, certainty, and value of the transactions (including any regulatory approvals required to close the transactions), and the likelihood and timing of consummating such transactions, each as determined by the Debtors, in consultation with the Consultation Parties.

g. No/Insufficient Qualified Bids. If the Debtors do not receive any Qualified Bids, the Auction shall be canceled, and the Debtors shall report the same to the Court.

h. One Qualified Bid. If the Debtors only receive one Qualified Bid, the Debtors may, in consultation with the Consultation Parties, either offer the Property for Auction to other Qualified Bidders or promptly proceed to seek entry of the appropriate order approving the transaction with such bidder. In addition, if the Debtors receive only one Qualified Bid for the Properties, the Debtors reserve the right to request, in consultation with advisors for the Consultation Parties, that the Court advance the date of the Sale Hearing and provide notice of such new date to those parties in interest entitled to notice thereof.

i. Auction Process. If the Debtors receive more than one Qualified Bid, the Debtors will conduct an auction or auctions (the "Auction") for the Properties, which shall be transcribed or recorded on video, at 9:30 a.m. (Central Time) on March 19, 2025 (the "Auction Date"), at the offices of Husch Blackwell, LLP, located at 120 South Riverside Plaza, Suite 2200, Chicago, IL 60606-3912, or such other location, including by virtual meeting, as shall be timely communicated to all persons or entities entitled to attend the Auction, which Auction may be cancelled or adjourned by the Debtors, in consultation with the Consultation Parties. The Auction shall run in accordance with the following procedures:

(i) The Debtors, the Consultation Parties, and any Qualified Bidder that has timely submitted a Qualified Bid, and each of their respective advisors, shall be permitted to attend the Auction, in person or by virtual meeting, whichever is appropriate at that time.

(ii) Only Qualified Bidders who timely submitted Qualified Bids will be entitled to make any subsequent Bids at the Auction.

(iii) If the Qualified Bid of a Qualified Bidder relates to only one or some of the Properties, the Debtors will have discretion, in consultation with the Consultation Parties, to consider whether to permit such Qualified Bidder to make subsequent Bids at the Auction for other or more portions of the Properties than those that were in the Qualified Bidder's original Qualified Bid.

(iv) The Debtors reserve the right, in consultation with the Consultation Parties, to conduct one or more Auctions for the Properties as a whole, or in specific lots comprising two or more of the Properties.

(v) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale transactions.

(vi) At least two (2) days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to participate in the Auction; provided that in the event a Qualified Bidder elects not to participate in the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such

Qualified Bidder until (i) the Court's approval of the selection of the Successful Bidder and Back-Up Bidder, or, (ii) if such Qualified Bidder is selected as the Successful Bidder or the Back-Up Bidder, the earlier of (x) closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (y) 45 days after the Sale Hearing. At least one (1) day prior to the Auction, the Debtors will provide to all Qualified Bidders who have timely submitted a Qualified Bid and timely informed the Debtors that they intend to participate in the Auction a copy of the Qualified Bid or combination of Qualified Bids that the Debtors believe, in their reasonable business judgment, in consultation with their counsel, financial advisors, and other advisors, and the Consultation Parties, is the highest or otherwise best offer (the "Starting Bid"), along with the starting minimum bid increments for each lot to be offered for sale at Auction (the "Starting Bid Notice"). The starting and subsequent minimum bid increments shall be determined by the Debtors in consultation with the Consultation Parties.

(vii) All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction, and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to participate in the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(viii) The Debtors, after consultation with the Consultation Parties and their respective advisors, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (defined below) or requiring that Subsequent Bids be the Qualified Bidders' final and best bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bid Procedures, the Bankruptcy Local Rules, the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) disclosed to each participating Qualified Bidder at the Auction.

(ix) Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid"), and (ii) the Debtors determine, in consultation with their advisors and the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each incremental bid at the Auction shall provide net

value to the estates over the Starting Bid or the Leading Bid, as the case may be, of at least the bid increment(s) for the lot(s) bid on as set forth in the Starting Bid Notice, provided that the Debtors shall retain the right, in consultation with their counsel, financial advisors, and other advisors, and the Consultation Parties, to modify the increment requirements at any time at or prior to the Auction after informing each participating Qualified Bidder. After the first round of bidding and between each subsequent round of bidding, the Debtors and the Consultation Parties shall announce the bid or combination of bids (and the value of such bid(s)) that they believe, in consultation with each of their respective advisors to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.

(x) The Debtors shall be authorized to utilize Hilco's electronic auctioneering platform to conduct the Auction.

(xi) The DIP Lender is a Qualified Bidder and will be permitted to credit bid up to the full amount of the DIP Obligations (as defined in the Interim DIP Order) at the Auction, subject to section 363(k) of the Bankruptcy Code.

(xii) Each Bid made at the Auction shall be irrevocable until the Court approves the selection of the Successful Bidder (as defined below) and the Back-Up Bidder (as defined below), provided that if a Bid is selected as the Successful Bid or the Back-Up Bid (as defined below), it shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (ii) 45 days after the Sale Hearing.

j. Reservation of Rights. Except as otherwise provided in the Bid Procedures or the Bid Procedures Order, the Debtors, after consultation with their advisors and the Consultation Parties: (i) may determine after each round of bidding at the Auction which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof; (ii) may reject, at any time, any Bid that the Debtors determine, in consultation with the Consultation Parties, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, and stakeholders; (iii) except as otherwise specifically set forth herein, may modify the Bid Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Properties; (iv) may extend the deadlines set forth herein, including, without limitation, the Bid Deadline; and (v) may continue or cancel the Auction or Sale Hearing in open court without further notice.

k. Selection of Successful Bid. Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties and their respective advisors, will identify the highest or otherwise best offer or offers for the Properties or portions thereof received at the Auction (one or more such Bids, collectively the "Successful Bid" and the bidder(s)

making such Bid, collectively, the "Successful Bidder"), and communicate to the Qualified Bidders the identity of the Successful Bidder, the Back-Up Bidder (defined below), if any, and the details of the Successful Bid and Back-Up Bid (defined below), if any. Within one (1) business day of the conclusion of the Auction, the Debtors will serve written notice of the results of the Auction to all Qualified Bidders, the Consultation Parties, and all other parties who have timely elected to receive notices related to the sale process. The determination of the Successful Bid and Back-Up Bid by the Debtors, in consultation with the Consultation Parties, at the conclusion of the Auction, shall be final, subject to approval by the Court. The Debtors' selection of and presentation to the Court of the Successful Bid and, if applicable, the Back-Up Bid will not constitute the Debtors' acceptance of either of such Bids, which acceptance will only occur upon the approval of such bids by the Court at the Sale Hearing.

l. Sale Hearing. The Debtors will seek entry of the Sale Order from the Court at the Sale Hearing to begin on or before April 8, 2025, (or at another date and time convenient to the Court) to, among other things, approve and authorize the sale transaction to the Successful Bidder, and, if applicable, the Back-Up Bidder, on terms and conditions determined in accordance with the Bid Procedures.

(i) If the Debtors receive one or more additional Qualified Bid(s), then, at the Sale Hearing, the Debtors will seek approval of the Successful Bid, and, at the Debtors' election, the next highest or otherwise best Qualified Bid (the "Back-Up Bid" and, such bidder, the "Back-Up Bidder").

(ii) The Debtors will sell the Properties or portions thereof to the applicable Successful Bidder pursuant to the terms of the Successful Bid (or, under certain circumstances described herein, the Back-Up Bidder) upon the approval of such Successful Bid (or Back-Up Bid if applicable) by the Court at the Sale Hearing.

m. Closing with Back-Up Bidders. Following Court approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Back-Up Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate a Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid of such Back-Up Bidder without further order of the Court. The Back-Up Bid shall remain open until the earlier of (i) the forty-fifth (45th) calendar day following the conclusion of the Auction or (ii) the consummation of the Sale to the Successful Bidder (the "Back-Up Bid Expiration Date"). Any provision in the Back-Up Bid conditioning such bid on a closing prior to the Back-Up Bid Expiration Date shall be void. All the Qualified Bids other than the Successful Bid and the Back-Up Bid shall be deemed rejected by the Debtors on and as of the date of approval of the Successful Bid and the Back-Up Bid by the Court.

n. Failure to Close. If the Successful Bidder fails to consummate the transaction in accordance with the terms of the applicable agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Debtors shall: (i) solely to the extent provided for in the applicable

purchase agreement, retain the Successful Bidder's Deposit; (ii) solely to the extent provided for in the applicable purchase agreement, maintain the right to pursue all available remedies, whether legal or equitable; and (iii) be free to consummate the proposed transaction with the Back-Up Bidder at the Back-Up Bid, without the need for an additional hearing or Order of the Court. With respect to Successful Bidder's Deposits, any deposit that becomes property of the Debtors' estates as a result of forfeiture for failure to close shall be subject to the DIP Lender's claims and liens granted by the Interim DIP Order and/or the Final DIP Order until all DIP Obligations are paid in full.

o. Deposits. The Deposit of any Back-Up Bidder shall be retained by the Debtors until the Back-Up Bid Expiration Date and returned to the Back-Up Bidder within five (5) Business Days thereafter or, if the Back-Up Bid becomes the Successful Bid, shall be applied to the Purchase Price to be paid by the Back-Up Bidder in accordance with the terms of the Back-Up Bid. The Deposits of Qualified Bidders not selected as either the Successful Bidder or Back-Up Bidder shall be returned to such bidders within five (5) Business Days of the date of the selection of the Successful Bidder and the Back-Up Bidder. The Deposit of the Successful Bidder will be dealt with in accordance with the terms of the Successful Bid.

*[End of Document]*